IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VERONICA JARAMILLO,

       Plaintiff,

v.                                            No. CIV 99-1425 LH/LCS

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand (Doc. 9), filed August 21, 2000. The Commissioner of Social Security issued a final decision determining that Plaintiff was no longer entitled to disability insurance benefits. The United States Magistrate Judge, having considered the Motion, the memoranda submitted by the parties, the applicable law, and being otherwise fully advised, finds that the motion is not well-taken and recommends that it be **DENIED**.

### PROPOSED FINDINGS

1.     The Commissioner of Social Security (Commissioner) issued a final decision determining that Plaintiff was no longer entitled to disability insurance benefits because her health had improved and she was able to work.(R. at 17-20; 7-9.) Plaintiff, now forty-three years old, filed her application for disability insurance benefits in January 1992, alleging disability due to neck, shoulder and back injuries sustained in two 1990 automobile accidents. (R. at 224-27; 251.) She is a high

school graduate with three years of administrative and business training.  Her past relevant work was as an interviewer for a state agency.

2.      On March 5, 1993, Administrative Law Judge F. Phillip Falvey (ALJ Falvey) determined that Plaintiff was disabled within the meaning of the Social Security Act and granted her disability insurance benefits. (R. at 66-77.)  On September 26, 1996, during a regular Continuing Disability Review, Plaintiff's disability was found to have ceased effective September 1, 1996. (R. at 91-94; 95-99.)  Plaintiff appealed the benefits termination decision by filing a Request for Hearing by ALJ. (R. at 137.)  On October 29, 1997,  ALJ William Nail (ALJ Nail) held a hearing, with Plaintiff appearing *pro se,* and received the testimony of Plaintiff, Melissa Benavidez, Plaintiff's daughter, and Janet Toney, a vocational expert (VE).  (R. at 25.)

3.      ALJ Nail issued his decision on December 23, 1997, finding that Plaintiff had not engaged in substantial gainful activity since the comparison point decision, Plaintiff had impairments consisting of scoliosis of the back, L5 radiculitis secondary to L4-5 mild spinal stenosis, a L5-S1 disc bulge, lumbar radiculopathy, and back and neck pain that did not meet the listings. (R. at 17-18.) Significantly, ALJ Nails determined that Plaintiff's depression was secondary to her physical limitations, she gave exaggerated testimony of symptoms and functional limitations for the period beginning September 1, 1996, and that while her back condition had not improved, there was a substantial improvement in her mental condition from the comparison point decision. (R. at 18.) Relying on the testimony of the VE, the ALJ determined at step four that Plaintiff was able to perform her past relevant work as an interviewer with the New Mexico Department of Labor.  (R. at 20.) ALJ Nail thus concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

4.      Plaintiff filed a request for review of the ALJ Nail's decision.  (R. at 11-13.)  On

September 8, 1999, the Appeals Council denied her request for review.  (R. at 7-8.)  Hence, the

decision of ALJ Nail became the final decision of the Commissioner for judicial review purposes.  On

November 9, 1999, the Appeals Council extended the time in which to file a civil action by thirty

days.  (R. at 5.)  On December 9, 1999, Plaintiff filed this civil action, seeking judicial review of the

Commissioner's final decision pursuant to 42 U.S.C. §405(g).

**Standard of Review**

5.      The standard of review in this Social Security appeal is whether the Commissioner's

final decision is supported by substantial evidence and whether he applied correct legal standards.

*See Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992).

Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion."

*Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting

*Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (citation omitted)).  A decision of an ALJ

is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by

other evidence on the record.  *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

6.      In order to qualify for disability insurance benefits or supplemental security income,

a claimant must establish a severe physical or mental impairment expected to result in death or last

for a continuous period of twelve months which prevents the claimant from engaging in substantial

gainful activity.  *See Thompson v. Sullivan*, 987 F. 2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C.

§ 423(d)(1)(A)).

7.      In a benefit termination case, the regulations of the Social Security Administration

require the Commissioner to apply the following specific evaluation steps to determine whether the

disability will continue: (1) Is the claimant engaged in substantial gainful activity? (2) Does the

claimant have an impairment or combination of impairments which meets or equals the severity of an impairment listed in Appendix 1 of 20 C. F. R. § 404, Subpart P? (3) Has there been a medical improvement related to the ability to do work? (4) If there has been medical improvement related to the ability to do work, does the claimant have a severe impairment or combination of impairments? (5) Is the claimant able to perform her past relevant work? (6) If not, does the claimant have the residual functional capacity to perform any other work? *See* 20 C. F. R. § 404.1594(f).

8.      The ultimate burden of proof lies with the Commissioner in a benefit termination case. *See Glenn v. Shalala*, 21 F. 3d 983, 987 (10th Cir. 1994).  Medical improvement is defined as any decrease in the medical severity of the impairments present at the time of the most recent favorable medical decision of disability.  *See* 20 C. F. R. § 404.1594(b)(1).  This determination is based upon changes in the symptoms or signs of laboratory findings associated with the impairment. *See id.*  The medical improvement must be related to the ability to perform work.  *See Glenn v. Shalala*, 21 F. 3d at 987.

**Administrative Record**

9.      In 1990, Plaintiff was involved in two automobile collisions, injuring her neck and back.  (R. at 315; 355.)  From December 1990 to February 1992, Plaintiff was treated by Dr. William D. Levitt, D.O. for neck, back and hip pain and headaches. (R. at 297-312).

10.      In December 1990, Dr. Mark L. Berger, M.D. performed a neurological examination revealing limited neck motion, with complaints of head pain, and difficulty with tandem walking. (R. at 314.)  Visual evoked potentials, brainstem auditory evoked responses, electroencephalograph testing and intra cranial CT scan were all normal. (R. at 314, 317-20.)  Dr. Berger diagnosed post-traumatic or post concussional syndrome and cervical and lumbar strain. (R. 314.)

11.      In January 1991, Dr. George R. Swajian, M.D., an orthopedic surgeon, opined that Plaintiff's intermittent paraesthesia was due to radiculitis cause by muscle spasm, and that loss of the normal spine curve indicated a whiplash injury. (R. at 322.)  At Dr. Swanjian's recommendation, Plaintiff underwent muscle toning physical therapy from February to May 1991. (R. 322-24.)  At the end of the program, Plaintiff exhibited continued moderate back dysfunction due to cervical, thoracic and lumbar strain/sprain.  (R. at 328-30, 336.)  In May1991, Plaintiff was discharged from the physical therapy program with a home exercise program. (R. at 295.)

12.      On July 15, 1991, Dr. Albert Rizzoli, M.D., observed that Plaintiff had trigger points from C-5 and C-7 and over both scapula and pain on Plaintiff's left sacroiliac joint. (R. at 358.)  Dr. Rizzoli assessed post traumatic sacroiliac arthritis, with some synovitis and post traumatic fibrositis. (*Id*.)

13.      In May 1991, Dr. Ulwelling performed a psychiatric examination.  (R. at 355-357.) Plaintiff complained of headaches and severe depression with irritability, tearfulness, isolativeness, insomnia, decreased appetite and anhedonia.  (R. at 355.)  Dr. Ulwelling diagnosed major depression, single episode, and assigned Plaintiff a Global Functioning Assessment Scale (GAF) of 55.[1]  (R. at 356.)  At that time, Plaintiff was taking Amitriptyline,  Lortab, Tylenol #4, Percadan, Soma, Endocin and Valium.  (R. at 356.)  Dr. Ulwelling increased the dosage of Amitriptyline and recommended follow-up psychotherapy.  (R. at 357.)  Dr. Ulwelling also noted that it might be necessary to phase

---

[1]A GAF score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." *See* American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), (4th ed. 1994) at 30. The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *See id*. at 32.

out Plaintiff's narcotic pain medications in order to treat her depression. (*Id*.)

14.    On April 7, 1992, Dr. Gerald S. Fredman, M.D. evaluated Plaintiff for a disability report. (R. at 360.)  Dr. Fredman noted that Plaintiff's emotional problems started in January 1991, when she learned she could not return to work.  (*Id*.)  She reported varying appetite, trouble falling and staying asleep, crying episodes, irritability, diminished concentration, isolation from outside activities, including contact with other people, and five suicide attempts.  (R. at 360-362.)  Plaintiff stopped seeing Dr. Ulwelling in August 1991, because she was tired of doctors. (*Id*.)  Plaintiff stated that she felt she could work if not for her physical problems. (R. at 361-362.)  Dr. Fredman diagnosed major depression, single episode, moderate to severe. (R. at 363.)  Dr. Fredman warned that the prognosis without treatment was guarded. (*Id*.)

15.    On July 29, 1996, Dr. Carlos Balcazar, M.D., performed a consultative psychological examination. (R. at 155-157.)  Plaintiff's attention span and ability to concentrate were intact. (R. at 156.)  Plaintiff's mood was euthymic and her emotional reaction was appropriate to the circumstances and content of thought. (*Id*.)  She exhibited a fair capacity for abstract thought, and both her remote and recent memory was well preserved. (*Id*.)  Dr. Balcazar opined that in 1991 Plaintiff had an episode of serious depression that she was able to overcome with treatment, and that at times she "feels down" as a "result of her being in pain most of the time and having physical limitations." (*Id*.)  Dr. Balcazar diagnosed dysthymic disorder, secondary to physical limitations and pain. (*Id*.)  He stated that Plaintiff had adequate judgment to plan a work sequence and did not foresee any difficulty in her interaction with co-workers and supervisory personnel. (R. at 157.) Dr. Balcazar concluded that Plaintiff's handicap was of a physical nature and should be medically appraised. (*Id*.)

6

16.     On August 1, 1996, Dr. G.T. Davis, M.D. performed a consultative physical examination. (R. at 158-165.)  Plaintiff's balance was good and her gait was normal.  (R. at 159.) She was able to walk on her toes, walk on her heels, and squat down. (*Id.*)  In the neck area, she demonstrated good flexibility, but some pain with extension and side bending movements. (*Id.*) Plaintiff showed good motion of the upper extremities with a pulling discomfort between the shoulder blades with full elevation of the arms. (*Id.*)  Hand functions were good and neurological function was to be intact.  (R. at 160.)  Plaintiff reported to Dr. Davis that she was able to clean the house, prepare meals, wash dishes, do laundry and garden with help. (R. at 165.)

17.     On September 13, 1996, Dr. Clint Morgan, M.D. completed a residual functional capacity assessment questionnaire. (R. at175-182).  Dr. Morgan found that Plaintiff was able to lift up to 20 pounds occasionally and ten pounds frequently, sit for six hours and stand for six hours in an eight-hour workday. (R. at 176.)  Dr. Morgan found that Plaintiff could occasionally climb, balance, stoop, kneel, crouch and crawl. (R. at 177.)

18.     Plaintiff testified that she used homeopathic remedies from 1993 to 1996. (R. at 35.) In 1996, she started going back to doctors. (*Id.*)  She was not seeing a psychologist, but was taking Prozac. (R. at 38.)  Plaintiff had a license but did not drive. (*Id.*)  She testified she was unable to wash dishes but occasionally cooked and helped do the laundry.  (R. at 42.)  Plaintiff was able to walk about a block and lift up to ten pounds.  (R. at 48-49) She stayed at home upstairs most of the time but was able to bathe and dress herself most of the time.  (R. at 44-45.)  Plaintiff's daughter testified that she and her sister had to do everything for Plaintiff.  (R. at 51.)  Ms. Toney, the vocational expert, testified that Plaintiff could perform her past relevant work as an interviewer.  (R. at 57-59.)

**Discussion**

19.     In support of her Motion to Reverse or Remand the Administrative Agency Decision,

Plaintiff contends that the ALJ's finding that she has medically improved is not supported by

substantial evidence; that the ALJ's finding that Plaintiff's mental impairment is not severe is not

supported by substantial evidence; that the ALJ's credibility determination is erroneous; that the

ALJ's determination that she could perform her past relevant work is not supported by substantial

evidence;  and that the ALJ failed in his duty to fully and fairly develop the record.

20.     The ALJ found that Plaintiff's mental impairment had improved to the point that it was

no longer severe because it did not interfere with her ability to work as of September 1, 1996.  In the

prior decision, ALJ Falvey had determined that Plaintiff was disabled based on the functional

limitations caused by her severe mental impairment of depression. (R. at 68, 71, 72 and 75-77.)  In

the decision under review, ALJ  Nails determined her depression was secondary to her physical

limitations, she gave exaggerated testimony of symptoms and functional limitations for the period

beginning September 1, 1996, and that while her back condition had not improved, there was a

substantial improvement in her mental condition from the comparison point decision. (R. at 18.) This

finding is supported by substantial evidence.

21.     Dr. Balcazar wrote that Plaintiff's mood was euthymic and that her emotional reaction

was appropriate to the circumstances and content of thought. (R. at 256)  While Dr. Balcazar

acknowledged that Plaintiff's physical condition sometimes impacted her mood, he did not observe

the symptoms of depression that Dr. Fredman had recorded in 1992 and that Dr. Ulwelling had

treated in 1991.  The record establishes that Plaintiff had not undergone any psychological treatment

since August 1991.  The ALJ properly compared Plaintiff's current mental condition to her prior

mental condition and determined that it had improved to the point that it no longer limited her ability to perform work activities. The determination that Plaintiff's mental impairment was not severe as of September 1996 is supported by substantial evidence of record.

22. Plaintiff's contention that the ALJ neglected to address the impact of her mental condition on her ability to perform work activities is similarly without merit. The ALJ discussed Dr. Balcazar's assessment that Plaintiff had adequate judgment to plan a work sequence and was able to interact with co-workers and supervisors. (R. at 19.) Based on Dr. Balcazar's report, the ALJ concluded that there had been a corresponding increase in her ability to perform basic work activities. (*Id.*) This finding is also supported by substantial evidence.

24. Plaintiff asserts that the ALJ erred in assessing her credibility. "Credibility determinations are peculiarly the province of the finder of fact," and will not be overturned if supported by substantial evidence. *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). Plaintiff established that she suffers from a pain-producing impairment. Therefore, the ALJ was required to consider her complaints of pain by evaluating her use of pain medication, her attempts to obtain relief, the frequency of her medical contacts, and the nature of her daily activities, as well as subjective measures of credibility including the consistency or compatibility of non-medical testimony with the objective medical evidence. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

25. ALJ Nail properly considered the *Kepler* factors in assessing Plaintiff's credibility. He discussed Plaintiff's ability to perform daily activities and acknowledged that she had received epidural injections, nerve root blocks and was taking pain medication. (R. at 20.) ALJ Nail questioned the inconsistencies between Plaintiff's testimony of significant physical limitations and

Dr. Davis's findings upon physical examination and discussed the fact that Plaintiff's testimony was contradicted by Dr. Morgan's residual functional capacity assessment. (*Id*.) The ALJ noted that Dr. Balcazar found virtually none of the neurovegetative symptoms that Dr. Ulwelling and Dr. Fredman had found in 1991 and 1992. (R. at 18.)

26.    Moreover, ALJ Nail had the opportunity to observe Plaintiff's demeanor and manner of testifying at the administrative hearing.  "[T]he determination of credibility is left to the observations made by the Administrative Law Judge as the trier of fact." *Broadbent v. Harris*, 698 F. 2d 407, 413 (10th Cir. 1983).  After observing Plaintiff's testimony at the hearing, ALJ Nail determined that her subjective complaints and functional limitations were not supported by the evidence as a whole to the disabling degree alleged and therefore lacked credibility. (R. at 18-19.) A review of the record establishes that the ALJ's findings are accurate and entirely consistent with the record.  The ALJ applied correct legal and standards and substantial evidence supports his determination that Plaintiff's complaints of disabling pain lacked credibility.

27.    Plaintiff argues that the ALJ's determination that she is able to perform her past relevant work is not supported by substantial evidence.  Specifically Plaintiff argues that the ALJ made no finding concerning the stressfulness of her past relevant work.  Step four of the sequential analysis is comprised of three phases. *See Winfrey v. Chater*, 92 F. 3d 1017, 1023 (10th Cir. 1996). In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity. *See id.* (*citing Henrie v. United States Dept of Health & Hum. Servs.*, 13 F. 3d 359, 361 (10th Cir. 1993)).  In the second phase, the ALJ must determine the physical and mental demands of the claimant's past relevant work. *See id.*  In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical

limitations found in phase one.  *See id.*

28.     In this case, the ALJ properly found that Plaintiff's mental impairment was not severe as of September 1, 1996.  A non-severe impairment does not significantly limit an individual's ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).  There was no finding that Plaintiff had any difficulty dealing with stress.  Moreover, looking at past relevant work, the test is whether a claimant has the residual functional capacity to perform the functional demands of a particular past relevant job, or the functional demands of the occupation as generally required throughout the national economy.  *See Winfrey*, 92 F. 3d at 1020.  Here, the vocational expert categorized the job of interviewer as low stress.  (R. at 56-57.)  Because there was no finding that Plaintiff had any difficulty dealing with stress and the job of interviewer was established to be low stress, the ALJ's finding that Plaintiff was able to perform her past relevant work was supported by substantial evidence.

29.     Plaintiff asserts that the ALJ failed to fulfill his duty to fully and fairly develop the record by not failing to obtain records from Dr. Aragon, Dr. Edwards and the physical therapy notes.  An ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing.  *See Carter v. Chater*, 73 F. 3d 1019, 1021 (10th Cir. 1996).  However, the claimant has the duty to furnish medical or other evidence that the ALJ can use to reach a conclusion about an impairment and its effect on the claimant's ability to work.  *See* 20 C.F.R. § 404.1512.  The ALJ is not required to further develop the record where there is no medical evidence present to support an alleged impairment.  *See Howell v. Sullivan*, 950 F. 2d 343, 349 (7th Cir. 1991).  Plaintiff has failed to allege that the additional records would support her claim for disability.  In this instance, the ALJ satisfied his duty to develop the record.

30.     The ALJ's finding that Plaintiff is not disabled because she can return to her past

11

relevant work is supported by substantial evidence and is in accordance with the law.

## RECOMMENDED DISPOSITION

The ALJ applied the correct legal standards and the decision is supported by substantial evidence. I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 9), filed August 21, 2000, be denied, the decision of the ALJ affirmed, and this case dismissed. Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may file with the Clerk of the District Court written objections to such proposed findings and recommendations. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**